### ELIJAH B. MIDDLEBROOK'S APPEAL FROM PROBATE.

*C* in 1858 made his note to *E*, his father, for $1,000 payable to *E's* order on demand with interest. *E* died in 1859 and by his will gave half the residue of his estate to *C* for life with remainder in fee to his son. The note was distributed as a part of this residue to *C* for life and to his son subject to his life use, but was retained by the executor till *C's* death in 1877, when it was delivered to the son, who presented it against *C's* estate, claiming the principal, and interest from *C's* death. *C* had never paid interest on the note and had never made a new promise to pay the note. Held that the note was not barred by the statute of limitations.

As *C* had been a legatee of the life use of the note and had availed himself of his rights as such, the law would regard that continuing use as such a continuing payment of interest as prevented the operation of the statute of limitations during his life.

APPEAL from the doings of commissioners on the estate of Charles S. Middlebrook, deceased, in allowing a claim in favor of Elijah Middlebrook, Jr., the appellant being a creditor of the estate; brought to the Superior Court in Fairfield County. Upon the trial the court found the following facts:—

Charles S. Middlebrook, the deceased, on the 20th of March, 1858, being indebted to Elijah Middlebrook, Sr., his father, in the sum of $1,000, gave to him his note for that amount dated on that day, payable on demand to Elijah Middlebrook or order, with interest. This note Elijah Middlebrook, Sr., owned until his death on the 2d of January, 1859. He left a will, the material part of which is as follows:—

"*Fifthly.* All the rest and residue of my estate, both real

and personal, in this state and elsewhere, I give, devise and bequeath as follows, viz: said residue to be divided into two equal parts, and one part thereof I give, devise and bequeath to my son Charles S., during his natural life, and the remainder thereof, that is of said last mentioned part, after the death of my son Charles S., I give, devise and bequeath to Elijah Middlebrook, Jr., the son of said Charles S., his heirs and assigns forever."

Upon the distribution of the estate of Elijah Middlebrook, Sr., the note in question was set to Elijah Middlebrook, Jr., subject to a life interest in the same in his father Charles S. Middlebrook. This distribution was made on the 25th of October, 1860. After the distribution the note remained in the hands of the executor of Elijah Middlebrook, Sr., who held it for Charles S. until the death of the latter on the 2d of April, 1877. It was then delivered by the executor to Elijah Middlebrook, Jr., who presented it to the commissioners on the estate of Charles S. Middlebrook, claiming the principal and interest from the death of the latter, and it was so allowed by the commissioners. While Charles S. had a life interest in the note he never made any promise to pay it, and never paid or received any interest upon it; nor had he made such promise or paid any interest after the note was made and prior to the death of Elijah Middlebrook, Sr.

Upon these facts the case was reserved for the advice of this court.

*D. Davenport*, for the appellant.

1. The note was barred by the statute of limitations. It was a negotiable note payable on demand. The statute therefore began to run against it from its date. 2 Parsons on Cont., (ed. 1860,) §§ 370, 371, 372; *Norton* v. *Ellam*, 2 Mees. & Wels., 461, 464; *Wenman* v. *Mohawk Ins. Co.*, 13 Wend., 268. When the statute began to run its operation could not be arrested by any supervenient disability. 2 Parsons on Cont., § 374; Byles on Bills, 334; *Rhodes* v. *Smithurst*, 4 Mees. & Wels., 58; *S. C.*, 6 id., 355. No disability supervened by reason of the decease of the payee, for after his death his administrator could have brought suit upon it.

2. The statute of limitations is for the protection of a debtor, and can only be voluntarily relinquished by a new promise to pay, either express or implied, made within six years prior to his decease. *Marshall* v. *Dalliber*, 5 Conn., 486; *Hart's Appeal from Probate*, 32 id., 539. The court finds that no such promise was ever made by Charles, and no facts are found that imply a promise. There was no payment of principal or interest; and no act is found to have been done within six years prior to his decease that amounts to an acknowledgment that the note was due. As there never was any payment either of the principal or interest, nor any promise to pay either principal or interest, it must have been barred in six years from its date, unless the will and the distribution under the will, in some way, arrested the operation of the statute.

3. The note was the written evidence of two choses in action existing in favor of Elijah Middlebrook, Sr., in his life-time against Charles, one for the payment of one thousand dollars on demand, and the other for the payment of interest on that sum till the sum was paid. *Brooks* v. *Holland*, 21 Conn., 393. By the finding it appears that the choses in action were never reduced to property in possession. At the death of Elijah, Sr., they passed by operation of law to his administrator. If now the will is supposed to govern the disposition of this note, then it gave to Charles these two choses in action for his life, with remainder to Elijah, Jr., after Charles's death; that is, it gave to Charles these two rights of action against himself. One right of action (for the principal,) though by the will it was given to him against himself, he was not to enforce, but it was to be suspended until his own death, when it was to pass over to Elijah, Jr. Then, for the first time after the death of Elijah, Sr., it was to be enforcible against Charles. That is, it was a right of action against Charles, which after his father's death remained suspended until his own death, seventeeen years after, when it revived against his executor; a cause of action that having existed against a man suddenly ceased for the rest of his life, and then springs into existence upon his decease. But the statute

had begun to run against this right of action during Elijah, Sr.'s, lifetime, and when it once begins to run nothing stops it. 2 Parsons on Cont., § 374. The other right of action (for the interest) was to be enforced by him against himself during his lifetime. That is, he was to stand in the double attitude of plaintiff and defendant. As it is found that he never paid or received any interest, it is plain that he never enforced the right of action against himself. But it is said that he is to be considered as paying the money to himself. It is expressly found that he did *not receive or pay* any interest on the note. But the payment of interest on a note takes it out of the statute of limitations only because it is a recognition of the obligatory force of the note, thereby implying a promise to pay the note. *Marshall* v. *Dalliber*, 5 Conn., 486. By the very terms of the proposition before us, Charles was never to pay the principal as long as he lived. How then could the constructive payment by himself to himself of imaginary interest imply a promise to pay the principal?

4. If on the other hand we consider the distribution as governing the disposition of this note, we find that it was distributed to Elijah, Jr., subject to the life interest of Charles therein. What was this life interest? It is said by the appellee that it was the right to receive the interest. That is, there passed by the distribution from the administrator of Elijah, Sr., to Elijah, Jr., a right of action against Charles for the principal, and at the same time to Charles the right of action against himself for the interest. What then was to prevent Elijah, Jr., from bringing suit against Charles for the principal. The statute had already begun to run against his claim in his grandfather's lifetime, and his enforcement of the right of action for the principal could not be any injury to Charles, for the right in Charles to enforce the payment of interest to himself out of himself could not be any benefit. Then too, by this theory of the appellee, the continued constructive payment of imaginary interest by Charles to himself by virtue of his right of action against himself cannot be considered as a promise to pay Elijah, Jr., the principal, so as to take it out of the statute, for by the

act of distribution the chose in action for the principal was divorced from the chose in action for the interest, and vested in a different individual.

5. If now it be said that the will or distribution gave the interest to Charles in the sense of excusing him from the payment of interest, then such gift did not take the note out of the statute. For such a gift only operated to expunge from the note the promise to pay interest and prevented the collection of interest by way of damages for the detention of the money. Surely such an act on the part of the payee of a note cannot be construed to be a promise on the part of the maker to pay the note, any more than the neglect of the payee to collect interest could be said to imply a promise on the part of the maker to pay the note.

6. But if it be claimed that there was intended to be distributed to Elijah, Jr., not a chose in action, but the sum of money represented by the note, (an assumption not warranted by the fact or the finding), still the note was barred. The finding shows that the note was never collected. *Brooks* v. *Holland*, 21 Conn., 393. Now if there was distributed to Elijah, Jr., the sum of one thousand dollars, subject to the life estate of Charles, and not the note, then this note was still the property of and was still a chose in action vested in the administrator of Elijah, Sr., and such note or chose in action never passed by the distribution to Elijah, Jr. So that, 1st, Elijah, Jr., got no title to the note; and, 2d, the title remaining in Charles's administrator, he might, and it was his duty to, have collected it; and, 3d, at the end of six years from its date, no promise having been made to pay it, nor any suit having been brought upon it, it was outlawed.

*A. S. Treat* and *C. Sherwood*, for the appellee.

It is claimed on the other side that no payment having been made upon either the principal or interest of the note, it is barred by the statute of limitations. Let us examine this in detail. At the death of Elijah Middlebrook, Sr., it was not barred by the statute. By distribution under his will it was taken out of the hands of the administrator and put in

such a condition that no one could sue upon it. Under the distribution the interest on the note belonged to Charles, the maker. He could not collect the principal, having no interest in or right to it, and not even the possession of it, without giving a bond to secure the remainder-man, the appellee. The appellee or remainder-man could not sue, the event not having happened which alone could give him a right of action. It belonged then to Charles both to pay and receive the interest on the note. For him to pay it would be simply transferring the money from one pocket to another of the same person. In such cases it is not necessary to indorse the interest on the note; the law will presume the payment of it so long as the same person is both entitled to pay and receive it. If the presumption is not as we have stated it, then the natural inference, if not presumption, would be that Charles purposely avoided the formal payment and indorsement to bar the right of action thereon. Of course if the interest had been paid and indorsed while the note was held by Charles it would have been kept alive and out of the statute. Was it necessary then for him to go and pay the interest to the administrator and have him indorse it upon the note or give a receipt therefor, and then hand it back again? It is not the policy of the law to compel or favor such technical, even absurd, formalities. The difficulty in the case is not that there was no person who could bring an action, but that there was no person against whom an action could be brought. The theory of the law is that a person should have six years in which to maintain an action; therefore the time during which no action can be maintained should be deducted. In this case the right to maintain an action was suspended by operation of law; and the appellee should not be prejudiced. *Semmes* v. *City Fire Ins. Co.*, 36 Conn., 543; *S. C.*, 13 Wall., 160; *Worthington* v. *Charter Oak Life Ins. Co.*, 41 Conn., 396, and cases there cited; *Hanger* v. *Abbott*, 6 Wall., 532; *United States* v. *Thomas*, 15 id., 350; *The People* v. *Tubbs*, 37 N. York, 588; *Doughty* v. *Doughty*, 10 N. Jer. Eq., 347; *Collester* v. *Hailey*, 6 Gray, 517. To the same effect would be disabilities caused by the act of God, the intervention of war or other overruling

necessity. This seems to be a new question before this court, but no new principle is involved in its determination. A familiar example would be, where a man had given his note to a *feme sole* and afterward married her. Being entitled to the interest on the note during coverture the law would presume he had paid it. Therefore if the note were presented against his estate at his decease interest would not be allowed during coverture. We claim therefore—1st. That in point of law the interest was paid on the note in question, and the same kept out of the operation of the statute. 2d. That during the life of Charles S. Middlebrook the statute was suspended and the time should be deducted. 3d. That the action of the commissioners in allowing the note should be confirmed by this court.

PARDEE, J.  On March 20th, 1858, Charles S. Middlebrook executed and delivered to his father, Elijah Middlebrook, his note of that date for $1,000, payable on demand with interest; the latter died in 1859, owning the note; by his will he devised and bequeathed the use of a specified portion of his estate to the said Charles S. for life, with remainder in fee to Elijah Middlebrook, Jr., son of the latter; the note was legally distributed to Elijah Middlebrook, Jr., in October, 1860, subject to the life interest of his father therein, but possession thereof was retained by the administrator upon the estate of Elijah Middlebrook for Charles S. Middlebrook until the death of the latter on April 2d, 1877, when it was delivered to Elijah Middlebrook, Jr.  Charles S. Middlebrook neither paid nor promised to pay the note, nor did he pay or receive any interest thereon.

Elijah Middlebrook, Jr., presented to the commissioners upon the estate of Charles S. Middlebrook, the note as a claim in his favor for the principal sum of $1,000, with interest from the date of the death of his father.  The claim was allowed. From this action of the commissioners Elijah B. Middlebrook took an appeal to the Superior Court; and this court is asked to advise as to the judgment to be rendered thereon.

The appellant insists that the note is barred by the statute of limitations.

By the combined operation of the will and the distribution the maker of the note became entitled to the use during his life of the principal sum which he had therein promised to pay upon demand. This life use is the full measure of the right thus conferred upon him; this right it was neither in his power while living, nor, being dead, in that of his representatives, to enlarge. Neither by acting, nor by omitting to act, could he change the life use into an absolute gift in behalf of himself or of his estate.

The administrator might have reduced the note into money by enforcing payment; and the maker might have paid it voluntarily; in either case of course being entitled to the use for life of an equivalent sum; and in neither case would he have come under any obligation to the remainder-man in reference to the matter.

But, by omitting to pay the note, by allowing that specific chose in action to remain in an unchanged form in the possession of the administrator, and by accepting it in that form as a component part of the estate subjected to his life use, he became charged in behalf of the remainder-man with the duty of preserving the life of the note, so that upon the termination of that life use it should be as valid a claim against his estate as it was at the beginning.

He knew that at the end of a certain number of years the note which he virtually held in trust would cease to impose any legal obligation upon, or to have any legal existence as against himself, unless he should previously make payments upon the principal thereof, or upon the interest accruing thereon, or should formally renew the obligation therein assumed.

During his life he protected himself under the distribution against any payment upon the principal; but as he acquired thereby no right to make that principal absolutely his own by his failure to keep the trust committed to him, there remained upon him the obligation to keep the note in life by payments of interest.

The testator not having provided that the note should constitute a portion of the estate to be set to his use, and of

course not being able to foresee that it would fall into that portion, the will, both in intent and expression, left him the unreleased promissor both as to principal and interest; by it his contract was neither annulled nor changed; and although it is true that by this accident of distribution, which carried the note into his portion, he became entitled as legatee to receive the interest which he should pay as promissor, he had not the power to destroy the property of the remainder-man simply by omitting to do anything; while it became his privilege to receive interest in one capacity, the obligation to pay in another continued upon him.

He continued the use of the principal named in the note under the continuing obligation to pay interest as therein written. Under such circumstances the law requires neither the formal act of payment by one hand into the other, nor the equally formal act of payment to and immediate reception from the administrator. So far forth as the remainder-man is concerned, by such use the payment of interest is an accomplished legal result in the absence of either of these formal acts. Inasmuch therefore as Charles S. Middlebrook had and enjoyed the privileges of a legatee of the use, the law will regard that continuing use as such continuing payment of interest as prevented the operation of the statute of limitations during his life.

We advise the Superior Court to affirm the decree of the court of probate.

In this opinion the other judges concurred.